Gaston, Judge,
 

 after stating the pleadings as above, proceeded as follows:
 

 There is much difficulty in ascertaining, at this day, the truth in regard to this. remote transaction, when many of those who were best able to throw light upon it have been removed by death. Neither
 
 Wiers,
 
 who it appears wrote the deed, nor
 
 Jacob Smith,ov James Wells,
 
 (which two last were the subscribing witnesses to it,) have been examined on the part of the plaintiffs or defendant. We can account for this omission on both sides only by the presumption that the testimony of nono of these can now be had. There are however, some facts about which little or no doubt can be entertained.' At the time of the transaction, the plaintiff was indebted g300 on account of the purchase of this land, which he was anxious, and pressed and unprepared to pay. This was known to the defendant, who expressed a disposition to assist the plaintiff, and to take a security upon the land for re-payment of the money. The plaintiff lived upon the land, which was then worth from $860 (the lowest) to $1200 (the highest estimate,)and owned scarcely any property beside. The whole of the money paid by the defendnat was precisely that needed for th#
 
 *561
 
 creditor, and was paid over to him. Both the parties are represented as Germans, with very little knowledge of tiic English language, and the plaintiff is illiterate, ami can neither read nor write.' A deed absolute in its terms was executed when the money was advanced, and for twenty-four years afterwards the plaintiff enjojed the land, paid the taxes for it. but paid no rent. And the defendant was the plaintiff’s son-in-law. Besides these, which we regard as ascertained facts, many witnesses testified to declarations of the defendant, that all he wanted was his money and interest — that the old man might redeem, hut no one else should, and that the whole must he paid in a lump. There is also evidence of declarations of the old man, who seems to have been never able to redeem by his own means, that the land was Smith’s, that his' creditors could not touch it, and at one time that he would no longer pay taxes for it. As .we are disposed to rely very little on the testimony as to the declarations of cither party, by witnesses who probable imperfectly understood,and have partially forgotten what they have heard, and do not very intelligibly relate what they remember, it is sufficient to say that the general effect of this testimony is to confirm the opinion which w,e have formed upon the facts that wo consider as without doubt. There is no evidence of a tender.
 

 It is a rule with all courts to consider the solemn deed of a'party as containing the deliberate and well-weighed terms of bis contract, ami not to permit these terms to be enlarged or restrained, 'explained or contradicted, by parol evidence. But upon a proper suggestion that through fraud, imposition, oppression, accident, sut prise or mistake, such deed was not made, conformably to the terms upon which the parties had agreed, and which the deed was to have expressed, a court of equity will examine into the verity of this suggestion, and upon that being established, will grant relief against the deed, because if is unconscicnfious that the party should be bound thereby. In receiving such suggestions, and in weighing the proofs by which it is attempted to support them, the
 
 *562
 
 court usually acts with great caution. But it would be unsuited to the exigencies of human society, if while it uniformly adhered to the same
 
 principles,
 
 it should require hi all cases the same amount of
 
 testimony
 
 to satisfy its judgment. The nature of the transaction to be investigated, the relative situation of contracting parties, the usages of business, and the ordinary motives of human conduct, may render the inference of an equity
 
 dehors
 
 the deed, scarcely possible in one case, and quite probable in another — may require for it so complete a demonstration in the former as is seldom to be attained, and permit it to be drawn in the latter from comparatively slender evidence. In
 
 all,
 
 the allegation of surprise or fraud must be established before the court will act; but different degrees of proof are required according to the probability, or improbability of the charge*
 

 Absoluts deeds taken from embarrassed men after a treaty for a loan, are viewed with distrust by Courts of Equity,
 

 Courts of equity view with much jealousy absolute conveyances taken from embarrassed men,after a negotiations for a loan of money. They regard such persons as in a state approaching to moral
 
 duress;
 
 likely to be goaded on by distress into submission to whatever terms may be exacted ; heedless of the forms, and inattentive to the words with which the transaction may be veiled; and thus peculiarly exposed to mistake and surprise, as well as to imposition and oppression. Where the written contract clearly conforms to that on which the parties had agreed, equity will often relieve, because its terms arc hard and grinding, and it readily receives evidence of the surrounding circumstances of the transaction, to shew that the written instrument does not in truth conform to the terms on which the parties had agreed. We hold it to be clearly settled that if
 
 these circumstances
 
 do establish that the parties really contracted as borrower and lender, and that what purports to be a sale and purchase, covers a loan of money and security for its re-payment — unless there be some explanation why the written instrument does not correspond with the precedent agreement — it will treat the instrument not as an absolute conveyance, but as security for the re-payment of money lent; will hold the lender
 
 *563
 
 ent¡tled, not to the thing pledged, but to his money for ^ was pledged and will permit the borrower, on re-paying what is justly due, to redeem what was pledged for its re-payment. It arrives at this conclusion principally from a consideration of these extraneous facts, and regards as of comparatively little consequence, the loose conversations of the parties. Among the circumstances which it deems of high moment when engaged in this enquiry, are
 
 u
 
 striking disproportion between the sum advanced, and that for which the property might have been sold — -the apparent vendor retaining possession, as if no deed had been made — the vendee receiving no rents,or only rents to the amount, or in lieu of interest. We have seen that in the present case there is this disproportion, the money being only about one-third of what such land then sold for in the neighborhood. The man who appears to have made the absolute deed retains the possession, and enjoys the profits lor twenty-four years afterwards, and pays no rent. But there are very strong additional circumstances. A loan and a pledge of the land were at one time intended, and except from the deed, there is no evidence of a change of intention. The sole object for which the money was wanted,and was known to be wanted, was to enable the applicant to hold this land, the home of himself and his family. The sum advanced was precisely that needed, and known to be needed for this purpose, and was all paid over to him whose claim it was necessary to remove. No benefit could result, but a certain' and vast injury did result to him who sought the favor, unless this advance was in the nature of a
 
 loan.
 
 And ifit were a loan, the
 
 only
 
 security which could be given must have been upon this land. Add that the plaintiff was illiterate and almost wholly ignorant of the language in which the deed was written, that the relation between the parties was such as to inspire confidence, and occasion carelessness, and that unquestionably the defendant has often expressed a willingness for a redemption, and we think wc cannot err in pronouncing that the deed was not designed to make an absolute conveyance of
 
 *564
 
 the property. Its original purpose was a security for money', and it was drawn in its present form either by imposition on the grantor, or as we rather believe, from the mistake of the parties, and was afterwards uncoil-scientiously set up by the defendant as an absolute conveyance. We hold, therefore, that the plaintiffs are entitled to redeem, and that for this purpose an account must be taken of whatever advances the defendant has made upon the faitii of this security, and of the rents which he has received since he lias gained possession.
 

 Per Curiam. — Direct aw account.